OPINION
{¶ 1} Appellant, Felix Brown, Jr., appeals from a judgment of the Trumbull County Court of Common Pleas, granting summary judgment to Stanley Morganstern, Pamela J. MacAdams, Christopher M. DeVito ("DeVito"), and Michael A. Partlow ("Partlow") (collectively "appellees"). For the reasons set forth below, appellant's three assignments of error are without merit, and we affirm the trial court's judgment.
 {¶ 2} Appellant, acting pro se, brought this legal malpractice action based upon Partlow's representation of appellant during the post-trial matters and appeal from appellant's criminal convictions. Appellant had been tried and convicted on charges of murder, with a firearm specification, and having a weapon while under a disability.[1] State v.Brown (Mar. 31, 2000), 11th Dist. Nos. 95-T-5349 and 98-T-0061, 2000 Ohio App. LEXIS 1430.
 {¶ 3} After appellant's convictions, Partlow was assigned as appellant's counsel. Partlow was of counsel to the firm of Morganstern, MacAdams and DeVito, L.P.A. ("the firm"). Partlow reviewed the trial transcript and forwarded it to appellant. Appellant contended that the trial transcript was materially inaccurate, and Partlow discovered that the Trumbull County Court of Common Pleas audiotaped important criminal trials, including trials for murder. Partlow forwarded a written transcript of the audiotapes to appellant, enabling appellant to specify which part or parts of the trial transcript he claimed were materially inaccurate. Appellant provided Partlow a very detailed comparison of the trial transcript and the written transcript from trial court's audiotape of the trial, and appellant outlined differences he claimed existed between the trial transcript and the transcript of the audiotapes and between the trial transcript and the testimony he recalled was given during trial. Appellant wrote to Partlow, "[as] I informed you previously, there is no way that any audio tapes were recorded during my jury trial. The audio tapes were made after the fact (after my trial) for the purpose of supporting my intentionally altered transcripts." (Emphasis sic.)
 {¶ 4} This court remanded appellant's criminal appeal pursuant to App.R. 9(E) to determine whether the trial transcript must be corrected. Prior to this limited remand hearing, the trial judge decided, off the record, that the trial witnesses would not testify at the hearing to their trial testimony. Appellant voiced his dislike for this decision in writing to Partlow and requested that Partlow object on the record, by any legal means possible, to this "ruling" so to make the trial judge's decision part of the record. Partlow did not follow these instructions. At the limited remand hearing, the trial court heard testimony from appellant, appellant's father, appellant's trial counsel, and the court reporter.[2] During this time, appellant contends he urged Partlow to cross-examine the court reporter to make her admit that the trial transcript was "materially inaccurate." Partlow did not follow these instructions.[3]
 {¶ 5} In its February 27, 1999 judgment entry, the trial court stated that "[u]pon full and final review of [appellant's] [m]otion, this Court finds it to be, in all respects, borderingon frivolous. [Appellant's] recollections were generally self-serving and without any basis in fact. * * * This Court finds the official transcript of this Court to have been completed in a true, accurate and professional manner." (Emphasis added.)
 {¶ 6} Appellant thereafter appealed his convictions. He put forth nine assignments of error, assignments six through eight being relevant to the instant appeal:
 {¶ 7} "[6.] The appellant's convictions for murder with firearms specification and one count of having weapons under disability, as alleged in Counts I and II of the indictment, were against the manifest weight of the evidence.
 {¶ 8} "[7.] The trial court's decision concerning the evidentiary hearing regarding the inaccuracies of the trial transcript of the proceeding was against the manifest weight of the evidence.
 {¶ 9} "[8.] The appellant was denied effective assistance of counsel, as guaranteed by the Sixth Amendment to the United States Constitution." Brown at 5.
 {¶ 10} This court concluded that the trial court's verdict was not against the manifest weight of the evidence. Brown at 23-24. Further, in finding appellant's seventh assignment of error without merit, this court noted "* * * the trial court reviewed the audio tapes of the trial and listened to the witnesses at the evidentiary hearing. We have no reason to doubtthe trial court's assessment of the audio tapes, and the recordof the evidentiary hearing supports the trial court's conclusionthat appellant's testimony was self-serving. Because the trial court's decision concerning the record was supported by competent, reliable evidence, we will not reverse its decision." (Emphasis added.) Brown at 31.
 {¶ 11} With regard to appellant's assignment regarding ineffective assistance of counsel, this court concluded that the failure of appellant's trial counsel to impeach the credibility of two state witnesses, based on prior inconsistent statements and statements inconsistent between the two witnesses, did not rise to the level of ineffective assistance of counsel. Brown
at 35. According to this court, even if appellant's trial counsel were deemed deficient, it was not prejudicial to appellant.Brown at 35-36. Appellant's assignments of error were not well taken, and this court affirmed appellant's convictions. Brown
at 41.
 {¶ 12} Appellant originally filed the complaint related to the instant legal malpractice matter in the Richland County Court of Common Pleas on July 17, 2001, as he was an inmate at the Mansfield Correctional Institution in Richland County, Ohio. Venue was transferred to the Trumbull County Court of Common Pleas on October 5, 2001.
 {¶ 13} In the first paragraph of his complaint, appellant sought damages and injunctive relief while alleging legal malpractice against appellees.[4] Specifically, appellant asserted that Partlow failed to adequately represent him during the App.R. 9(E) limited remand hearing by failing to follow appellant's instructions about how to cross-examine the court reporter.[5] As a result, appellant argued that "not only was [he] prevented from receiving a fair consideration of his merits based upon an incomplete and inaccurate record, also he was and continue [sic] to be denied a new trial and any fair consideration of any appellate review due to the record being incomplete and inaccurate."
 {¶ 14} Appellant also asserted in his original complaint that all appellees failed "to comply with the standard of conduct expected of layers [sic]," violated various sections of the Code of Professional Responsibility, and improperly litigated his case. Appellant alleged that appellees thus denied him of a fair trial and effective assistance of counsel.[6] Appellant provided no specific factual allegations. Appellees answered.
 {¶ 15} Appellant was granted leave and filed an amended complaint on August 22, 2001. Appellant added an "additional claim for legal malpractice," only against Partlow, and did not re-allege his prior claims. Appellant argued that Partlow negligently violated various sections of the Code of Professional Responsibility by failing to request that the trial judge's decision not to permit witnesses to testify at the remand hearing to their trial testimony "be made part of the * * * record." All appellees timely answered.
 {¶ 16} Appellant was granted leave to file a second amended complaint, which was filed on November 27, 2001. This complaint added three additional legal malpractice "claims." Appellant alleged that Partlow improperly referenced appellant's 1983 forgery conviction in the appellate brief connected with the underlying criminal appeal; that Partlow improperly introduced and allowed the state to introduce evidence of appellant's 1980, 1982, and 1983 convictions during the course of the limited remand hearing;[7] and that Partlow failed to list and address either omitted or incorrectly transcribed sections of the trial record as appellant instructed him to do during the limited remand hearing. Appellees timely answered.
 {¶ 17} The trial court held its first status conference on March 5, 2002 and ordered appellant to produce his expert report by June 5, 2002. Instead of providing an expert report, appellant filed a document entitled "In Lieu of Expert Reports" on June 5, 2002. In this document, appellant argued that "[g]enerally, a legal action may not go to the jury if Expert Testimony * * * is not provided. However, while Expert Testimony is generally required in most cases, it is unnecessary where the claimed breach of Professional duty, such as a failure to follow specific (lawful) instruction to the client." Appellant then cited various Ethical Considerations and described how Partlow allegedly breached them. Appellant then asserted that the remaining appellees were unjustly enriched and received financial gain as a result of Partlow's "appointed (malice) representation" of appellant.
 {¶ 18} On May 22, 2002, just fourteen days before the appellant's expert report was due, appellees received service of appellant's purported request for admissions.[8] Although it was entitled request for admissions, this discovery was in fact in the form of interrogatories requesting Partlow to explain in detail why he decided upon and undertook specific trial strategies when representing appellant during the post-trial matters and appeal from appellant's criminal convictions. Appellees served their responses to this discovery on June 26, 2002, and their responses were then late.
 {¶ 19} On or about July 8, 2002, citing Civ.R. 7(B), appellant served a motion to strike appellees' answers and objections toward appellant's request for admissions because they were late according to the Civil Rules.[9] According to appellant, when a party files a late discovery response, it must first put forth a showing, by motion, of "excusable neglect;" failure to do so, appellant argued, requires the discovery response be stricken from the record. Appellant also argued he was prejudiced by appellees' delay, but he did not at that time specify how he was prejudiced. Accordingly, appellant argued the trial court should strike these answers and objections because appellees failed to demonstrate "excusable neglect" prior to their late responses.
 {¶ 20} Appellees opposed this motion, arguing that appellant's "admissions" were "interrogatories," that appellant was not prejudiced by the delay, and that Civ.R. 7(B) provided no basis for striking discovery responses. The trial court denied appellant's motion on July 18, 2002. Appellant moved this court to reconsider this denial, and appellees opposed this motion; the trial court did not formally rule on the motion.
 {¶ 21} Meanwhile, on June 5, 2002, appellant moved again to amend his complaint, for a third time, to add three additional "claims." According to these claims, Partlow negligently represented appellant by failing to assign as error in his criminal appeal the trial judge's refusal to give a jury instruction pertaining to appellant's theory that the victim's death was an accident. Appellant next argued that Partlow was negligent in failing to assign as error appellant's trial counsel's "failure to make a formal objection towards the Trial Judge's refusal to give the jury a properly requested instruction on accident."[10] Further, appellant contended that Partlow was negligent in his appellate representation because he assigned an error under the ineffective assistance of counsel doctrine which should have been assigned under a prosecutorial misconduct theory.[11]
 {¶ 22} Appellees opposed appellant's motion to file a third amended complaint. Appellees contended that appellant's attempt to add additional claims toward his legal malpractice claim "is simply repetitive restatement of his prior factual allegations against [appellees]. The additional `claims' cannot stand as separate causes of action. [Appellant] has already pled legal malpractice against [appellees] and the proposed additional claims fall within his general claim of legal malpractice. Yet another amendment of [appellant's] Complaint serves only to waste [appellees'] time and money and does not change [appellant's] position in this case." On June 24, 2002, the trial court denied appellant's motion to further amend his complaint. Appellant requested the trial court reconsider its judgment, appellees opposed this motion, but the trial court did not formally rule on the motion.
 {¶ 23} Meanwhile, on July 2, 2002, appellees moved for summary judgment. Appellees argued that appellant's legal malpractice claims required expert testimony to prove and that they failed because appellant did not put forth expert testimony establishing the applicable standard of care. Attached to their motion was an affidavit by Partlow stating that he at all times met the applicable standard of care for an attorney practicing in the same circumstances. According to appellees, DeVito was deceased at the time of commencement of this matter. Appellees also stated that DeVito "was never a part of the firm of Morganstern, MacAdams DeVito Co., L.P.A. His name was carried over from a prior law firm which merged with another, resulting in the firm now called Morgenstern [sic], MacAdams [] DeVito Co., L.P.A. Nicholas M. DeVito is deceased and his death occurred prior to the merger. * * *"
 {¶ 24} Appellees then argued that the remaining appellees could not be found liable to appellant; Partlow was only "of counsel" to the firm.
 {¶ 25} Appellant opposed this motion. In support of this, he reiterated his various claims against Partlow and the remaining appellees. Appellant then argued that expert testimony was not necessary to support his claims because Partlow's alleged breach in failing to follow specific instructions of the client was so obvious that it was within the ordinary knowledge of a jury. Appellant then argued that even if Partlow was "of counsel" to the firm, the remaining appellees "maintained an authoritive [sic] influence over Atty. Partlow, as well as received financial gain (percentage) towards Atty. Partlow's legal representation. [Therefore,] the active partners of said law firm must also be held to the level of accountability for their' [sic] financial gain, as well as towards Atty. Partlow's negligent and wanton legal representation" of appellant.
 {¶ 26} Appellees filed a reply brief, again pointing out that appellant failed to present expert testimony in support of his legal malpractice claims and arguing that this was fatal to appellant's legal malpractice claims. Appellees argued that appellant's claims related to how Partlow handled evidentiary matters, all of which constituted specific nuances of the practice of law; appellees therefore contended that because these evidentiary matters were outside the knowledge of the jury, proof of legal malpractice required expert opinion evidence which appellant failed to provide. Appellees concluded that they established that there existed no genuine issues of material fact, and appellant failed to satisfy his reciprocal burden under Civ.R. 56(C) to present evidence suggesting the existence of a genuine issue of material fact.
 {¶ 27} On October 24, 2002, the trial court granted summary judgment in favor of all appellees. From this judgment, appellant sets forth the following three assignments of error:
 {¶ 28} "[1.] The trial court erred as a matter of law to the prejudice of plaintiff-appellant in granting defendants-appellees [sic] motion for summary judgment when there remained issues withstanding.
 {¶ 29} "[2.] The trial court erred in Denying [sic] appellant leave to amend his complaint to include a `Dead Bang Winner' issue against appellees.
 {¶ 30} "[3.] The trial court erred in refusing to strike Defendants-Appellees [sic] Dilatory [sic] answers towards Plaintiff-Appellant's requests for admissions."
 {¶ 31} In appellant's first assignment of error, he argues that the trial court erred by granting summary judgment to appellees. After our review of the record and relevant case law, it is apparent that the trial court did not err in granting summary judgment to appellees. Accordingly, appellant's first assignment of error is without merit.
 {¶ 32} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio EdisonCo., 77 Ohio St.3d 102, 105, 1996-Ohio-336. Pursuant to Civ.R. 56, summary judgment is appropriate when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can reach only one conclusion, which is adverse to the party against whom the motion is made, such party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C);Mootispaw v. Eckstein, 76 Ohio St.3d 383, 385, 1996-Ohio-389;Leibreich v. A.J. Refrigeration, Inc., 67 Ohio St.3d 266, 268,1993-Ohio-12; Bostic v. Connor (1988), 37 Ohio St.3d 144, 146.
 {¶ 33} Material facts are those facts that might affect the outcome of the suit under the governing law of the case. Turnerv. Turner, 67 Ohio St.3d 337, 340, 1993-Ohio-176, citingAnderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 248. To determine what constitutes a genuine issue, the court must decide whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. Turner at 340.
 {¶ 34} A party seeking summary judgment on the grounds that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. Dresher v. Burt,75 Ohio St.3d 280, 1996-Ohio-107. Accordingly, the moving party must specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim. Id. If the moving party satisfies its initial burden under Civ.R. 56(C), the nonmoving party has the reciprocal burden to respond, by affidavit or as otherwise provided in the rule, so as to demonstrate that there is a genuine issue of fact. Id. However, if the nonmoving party fails to do so, then the trial court may enter summary judgment against that party. Id.
 {¶ 35} We will now address the merits of appellant's first assignment of error. In this assignment of error, appellant essentially argues that the trial court erred in granting appellees' motion for summary judgment because there existed genuine issues of material fact. In support of this, appellant simply reiterates his claims.
 {¶ 36} After our careful review of the record, it is clear that the trial court did not err by granting summary judgment to appellees. To establish a claim for legal malpractice, a plaintiff has the burden to submit evidence tending to show the following "(1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by the law, and (3) that there is a causal connection between the conduct complained of and the resulting damage of loss." Vahilav. Hall (1997), 77 Ohio St.3d 421, 427, 1997-Ohio-259.
 {¶ 37} Generally, the law requires that a plaintiff in a legal malpractice action submit expert testimony establishing a standard of care, unless the claim of unprofessional conduct is such that it comes within the ordinary knowledge of the jury.McInnis v. Hyatt Legal Clinics (1984), 10 Ohio St.3d 112, 113. Expert testimony is required whenever a claim of legal malpractice involves questions about an attorney's professional judgment in the prosecution or defense of an action.Cross-Cireddu v. David J. Rossi Co., L.P.A. (Nov. 22, 2000), 8th Dist. No 77268, 2000 Ohio App. LEXIS 5480, at 9-10. The defendant attorney's affidavit may provide a sufficient basis upon which to grant a motion for summary judgment where a plaintiff has failed to present an opposing affidavit of a qualified expert witness to establish the standard of care to support the plaintiff's legal malpractice action. Roberts v.Hutton, 152 Ohio App.3d 412, 2003-Ohio-1650, at ¶ 55.
 {¶ 38} In the instant case, appellant seems to argue that Partlow's alleged ethical violations relieve him from his obligation to put forth expert testimony establishing the standard of care. However, any breach of the Code of Professional Responsibility or an Ethical Consideration does not itself give rise to a claim in legal malpractice. Fred Siegel Co., L.P.A. v.Arter Hadden, 85 Ohio St.3d 171, 178, 1999-Ohio-260. A violation of a disciplinary rule or ethical consideration is actionable only if it constitutes an independent tort. A plaintiff is not relieved of his burden to establish the standard of care simply because an attorney's actions purportedly constitute ethical violations.
 {¶ 39} Further, appellant's alleged breach of duty does not fall within the ordinary knowledge of the jury and excuse him from putting forth expert testimony. Expert testimony was required in this matter because Partlow's alleged ethical violations all relate to the exercise of professional judgment,
specific nuances of the practice of law, Partlow's handling of evidentiary matters, and Partlow's overall decision-making in the context of his representation during the limited remand hearing and appeal from appellant's convictions. This is not the kind of limited, obvious violation of a duty that is within the ordinary knowledge of the jury. Therefore, appellant's failure to put forth expert testimony is fatal to his claims, and the trial court properly granted summary judgment to Partlow.
 {¶ 40} With regard to the remaining partners' liability under the doctrine of respondeat superior and/or unjust enrichment, if Partlow is not liable, the partners have no liability. The trial court, thus, correctly granted summary judgment to the remaining appellees.
 {¶ 41} In conclusion, appellees satisfied their burden to demonstrate that appellant had no evidence to support his case against Partlow and the remaining appellees, and appellant did not satisfy his reciprocal burden to demonstrate the existence of a genuine issue of material fact. The trial court correctly granted summary judgment in favor of all appellees, and appellant's first assignment of error is not well taken.
 {¶ 42} In appellant's second assignment of error, he argues that the trial court erred by denying appellant leave to amend his complaint for a third time, to include a "Dead Bang Winner" claim against appellees.[12] We disagree.
 {¶ 43} When reviewing a court's denial of a timely motion seeking leave to file an amended complaint, an appellate court must apply the abuse of discretion standard. Peterson v.Teodosio (1973), 34 Ohio St.2d 161, paragraph six of the syllabus. An abuse of discretion connotes more than an error of law of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 44} Civ.R. 15(A) governs amendment of pleadings. Once the time for an amendment of right has passed, a party may amend his pleading "only by leave of court or consent of the adverse party. Leave of court shall be freely given when justice so requires." Civ.R. 15(A). "It is an abuse of discretion for a court to deny a motion, timely filed, seeking leave to file an amended complaint, where it is possible that plaintiff may state a claim upon which relief may be granted and no reason otherwise justifying denial of the motion is disclosed." Peterson, at syllabus. Thus, while the rule necessitates that leave be given freely, justice requires the moving party to establish a prima facie showing of support for the new matters he seeks to plead. Wilmington SteelProducts, Inc. v. Cleveland Elec. Illuminating Co. (1991),60 Ohio St.3d 120, syllabus. When the moving party fails to present a prima facie claim, the motion to amend the complaint must be denied. Wilmington, at syllabus.
 {¶ 45} In the instant matter, appellant moved to amend his complaint for a third time on June 5, 2002, nearly a year after filing his first complaint. The time for amendment of right had passed, and appellant could only amend his complaint with leave of the court or consent of the adverse party.
 {¶ 46} Justice did not require appellant's motion be granted, the trial court did not abuse its discretion in denying appellant's motion. Appellant's proposed claim did not constitute a legally cognizable claim, as no cause of action exists specifically for a "dead bang winner" issue. This claim constitutes an additional allegation within his existing cause of action for legal malpractice. Because Ohio is a "notice" pleading state, requiring only a "short and plain statement of the claim showing that the party is entitled to relief" and "a demand for judgment for the relief to which the party claims to be entitled," this additional allegation would therefore add nothing to appellant's case. Civ.R. 8(A).
 {¶ 47} Appellant was not prejudiced by the court's denial, as he could allege this claim under his cause of action for legal malpractice without even amending his complaint. Accordingly, the trial court did not abuse its discretion by denying appellant's motion to amend his complaint for the third time. Appellant's second assignment of error is without merit.
 {¶ 48} In appellant's third assignment of error, he argues the trial court erred by refusing to strike appellees' answers and objections to appellant's purported request for admissions. We disagree.
 {¶ 49} We review the trial court's refusal upon an abuse of discretion standard. It is axiomatic that a trial court has broad discretion when regulating discovery and that an appellate court will review the trial court's exercise of discretion for an abuse of that discretion. Mauzy v. Kelly Services, 75 Ohio St.3d 578,592, 1996-Ohio-265.
 {¶ 50} In the instant matter, appellant essentially argues that because he did not receive appellees' response within twenty-eight days from the date of service, and appellees' had not made a showing of "excusable neglect" as required by Civ.R. 6(B)(2), the trial court should have stricken the responses from the record and ruled "as conclusive the admission of [appellant's] allegations." Appellant asserts appellees' delayed response has caused him substantial prejudice in his ability to secure expert testimony.[13]
 {¶ 51} Contrary to appellant's assertion, Civ.R. 6(B)(2) does not require that appellees first make a showing, by motion, of "excusable neglect" before being permitted to file late discovery responses. Further, appellant did not endure any prejudice as a result of appellees' delayed response to appellant's discovery request. Appellant contends that had appellees' response been timely, appellant would have been able to secure expert testimony to establish the applicable standard of care, by the June 5, 2002 deadline. This does not logically follow.
 {¶ 52} Appellant was ordered, during the March 5, 2002 status conference, to produce an expert report by June 5, 2002. Instead of taking steps to provide appellees proper time to respond to discovery requests, appellees received service of appellant's request for admissions on May 22, 2002, only fourteen days before appellant's expert report was due.[14] Because Civ.R. 33 requires that discovery responses be served within twenty-eight days after service of the request, appellant's expert report was due approximately ten days before appellees' discovery response. Even if appellees' response was timely, this would not have enabled appellant to secure an expert and produce an expert report by June 5, 2002. Accordingly, appellant's third assignment of error is without merit.
 {¶ 53} In conclusion, appellant's first, second, and third assignments of error are not well-taken. We hereby affirm the trial court's grant of summary judgment to appellees, the trial court's denial of appellant's motion to amend his complaint for a third time, and the trial court's refusal to strike appellees' discovery responses.
O'Neill, J., Grendell, J., concur.
[1] Partlow did not serve as appellant's trial counsel.
[2] Appellant did not make a transcript of the limited remand hearing a part of the record of this legal malpractice matter; however, all parties essentially agree that these persons testified during the limited remand hearing.
[3] Again, appellant did not make a transcript of the limited remand hearing a part of the record of this legal malpractice matter; however, both parties in this matter basically agree that Partlow did not follow appellant's instructions during the limited remand hearing as to how Partlow should cross examine the court reporter.
[4] In appellant's complaint(s), appellant sets forth his causes of action as "claims." We will construe appellant's "claims" as causes of action.
[5] Again, appellant did not make the transcript of the limited remand hearing part of the record of this legal malpractice action.
[6] Appellant frequently confuses a claim of legal malpractice and a claim for ineffective assistance of counsel. Despite this, it is clear that in this matter appellant is requesting damages due to alleged legal malpractice, not ineffective assistance of counsel which has a different remedy.
[7] Nothing in the record reveals further details about these convictions.
[8] No certificate of service is included as part of this request, and we cannot ascertain when this request was served.
[9] Nine days later, appellant moved to amend this motion to correct a typographical error, asserting that he intended to refer to Civ.R. 12(F) instead of Civ.R. 7(B). The trial court denied this motion.
[10] Appellant refers to this as Partlow's failure to assign a "`very obvious `Dead Bang Winner'" issue on appeal.
[11] This claim relates to trial counsel's failure to cross examine a state witness police officer regarding his conflicting testimony. Appellant argues that essentially his trial counsel permitted this witness and the prosecutors to put forth material perjury and, therefore, Partlow "permitted" the prosecution to maintain this allegedly perjured testimony by failing to assign prosecutorial misconduct as error upon appeal.
[12] Appellant argues that the trial court erred by denying "appellant leave to amend his complaint to include a `dead bang winner' issue against appellees." The claim appellant wished to add was that Partlow failed to assign a "dead bang winner" in the underlying criminal trial, and that "dead bang winner" was the trial court's failure to instruct the jury on appellant's "accident" theory. It seems that Partlow's alleged failure to argue that "dead bang winner" constituted appellant's alleged "dead bang winner" claim against Partlow.
[13] Appellant stated at the trial court level that he was prejudiced by appellees' delay, but he did not specify at that time how he was prejudiced.
[14] Appellant's request for admissions do not contain a certificate of service enabling us to ascertain when this discovery was served.