OPINION
{¶ 1} Appellants, Rachael Masek ("Rachael") and Raymond J. Masek ("Raymond"), appeal the March 31, 2004 judgment entry of the Geauga County Court of Common Pleas, in which the trial court granted the motion for a directed verdict of appellees, Jean Gehring ("Gehring"), Michael Hoffarth, and the county of Geauga.[1]
 {¶ 2} On December 2, 1999, appellants filed a complaint against appellees and Jennifer Loehrke ("Loehrke"). The lawsuit alleged defamation, fraud, negligence, civil conspiracy, and intentional and negligent infliction of emotional distress. Appellants contended that appellees were negligent in their handling of a case involving Rachael and her mother, Lynn, because they allowed Rachael, a minor, to stay with Lynn when they had knowledge of her mother's suicide attempts. In addition, there were allegations that Lynn drove Rachael and her friends at times when she was under the influence of alcohol. The complaint further claimed that appellees communicated false statements about Rachael's father, Raymond, and knowingly withheld information about Rachael's situation from Raymond.
 {¶ 3} On September 25, 2000, appellees filed a motion for summary judgment on all counts. On October 12, 2000, appellants filed a motion to stay their response to appellees' motion for summary judgment pending appellees' compliance with appellants' discovery requests. The trial court never ruled upon this motion. Appellants then filed their response in opposition to appellees' motion for summary judgment on October 20, 2000. On June 29, 2001, the trial court granted appellees' motion for summary judgment in its entirety.
 {¶ 4} Appellants then filed an appeal of the summary judgment decision. This court ultimately reversed the judgment of the trial court and remanded the matter for the trial court to rule on appellants' motions regarding discovery and to allow appellants ample time to respond to appellees' motion for summary judgment. Masek v. Gehring, 11th Dist. No. 2001-G-2373, 2002-Ohio-5151, at ¶ 22.
 {¶ 5} Appellants requested leave to file an amended complaint on March 8, 2004, which the trial court granted. The amended complaint, which was filed on March 15, 2004, eliminated Loehrke as a defendant. The amended complaint also essentially asserted claims in negligence and loss of consortium, alleging in part that Rachael had suffered serious mental and emotional injuries as a result of the fact that she had been allowed to continue to live with Lynn even after certain events had occurred. For their ultimate relief, appellants sought both compensatory and punitive damages.
 {¶ 6} Thereafter, on March 29, 2004, a jury trial was held. In a judgment entry rendered on March 31, 2004, the trial court granted a directed verdict in favor of appellees and against appellants on all counts in their amended complaint. In support of its decision, the trial court cited three separate reasons why appellants' evidence had been insufficient to establish Gehring's basic liability.
 {¶ 7} The facts pertinent to this appeal are as follows. Raymond married Lynn in 1984, and Rachael was the only child born as issue of the marriage in 1987. The marriage ended in a dissolution in 1990, and Lynn was given custody of Rachael, and Raymond had visitation rights. Due to Lynn's alcohol abuse, the Geauga County Department of Human Services ("GCDHS") became involved in the matter.
 {¶ 8} The case was initially investigated by an assessment worker, Tonya Hall. There were reports of Lynn driving under the influence of alcohol with Rachael in the car. As a result, an action commenced in the Geauga County Juvenile Court, and Rachael was adjudicated a dependent child pursuant to R.C. 2151.04(B). The court ordered that the GCDHS exercise protective supervision over Rachael. Gehring, who was unaware of the alcohol history of Lynn, became involved with Rachael and assumed supervision over her. Gehring, a licensed social worker, was involved in the case from May 1999 until January 2000.
 {¶ 9} In August 1999, Rachael witnessed her mother attempt suicide, and after this attempt, Gehring placed Rachael with Raymond. However, in December 1999, after the lawsuit was filed, Raymond went on vacation and allowed Rachael to visit with Lynn. Gehring had no involvement in this visit, and during the visit, Rachael again witnessed Lynn attempt suicide.
 {¶ 10} Appellants timely filed the instant appeal from the trial court's entry granting a directed verdict in favor of Gehring. They assign the following as error:
 {¶ 11} "[1.] The trial court erred to the prejudice of appellants in ruling that appellants were required to offer evidence as to the standard of care or the duty of care that [Gehring] owed to [Rachael], and whether [Gehring] met that standard or duty of care.
 {¶ 12} "[2.] The trial court erred to the prejudice of appellants in ruling that appellants failed to present any evidence that [Gehring] was reckless in the performance of her duties, and that [Gehring] was entitled to a directed verdict on that ground.
 {¶ 13} "[3.] The trial court erred to the prejudice of appellants in ruling that there was insufficient evidence to support a finding of proximate cause between any acts or omissions of [Gehring] and injury suffered by [Rachael]."
 {¶ 14} In each of these three assignments, appellants challenge an aspect of the trial court's decision to grant the directed verdict in favor in Gehring at the close of their case-in-chief. Under the first, appellants maintain that the directed verdict should not have been granted on the basis that they failed to submit any evidence pertaining to the standard of care Gehring had to meet in performing her duties as a social worker. They contend that, since the subject matter of the case could be understood by a layperson, it was not necessary for them to present the testimony of an expert witness to the jury in order to establish the elements of their claim.
 {¶ 15} As a general proposition, the plaintiff in a civil tort action is not required to submit affirmative evidence as to the standard of care which governed the defendant's acts in the underlying transaction. Anderson v. Stratton Chevrolet (Nov. 3, 2000), 7th Dist. No. 99-CA-164, 2000 Ohio App. LEXIS 5127. However, Ohio law has recognized one major exception to the foregoing rule: if the subject matter of the tort case pertains to the liability of a licensed professional, the plaintiff usually must present the testimony of an expert witness as to the standard of care involved and whether the professional met the standard in this particular instance. McInnis v. Hyatt LegalClinics (1984), 10 Ohio St.3d 112. Although the requirement of an expert is commonly associated with cases involving alleged legal malpractice, it is also followed in actions against other licensed professionals such as doctors and architects.Anderson, supra. If the plaintiff fails to present an expert when one is necessary, a directed verdict can be granted.Phillips v. Courtney, 8th Dist. No. 84232, 2004-Ohio-6015.
 {¶ 16} Our research on this issue has failed to reveal any Ohio case in which the court has addressed whether an expert witness should be required in a tort proceeding against a licensed social worker. Nevertheless, despite the lack of precedent, this court holds that the nature of social workers' duties supports the conclusion that an expert witness should be required. As to this point, we would note that a person must have a specific educational background and passed a specific state test before becoming a licensed social worker. Furthermore, the nature of the actions a social worker can take in regard to a dependent child is controlled by both certain state laws and, at times, the orders of a juvenile court. To this extent, many aspects of a social worker's duties would not be within the common understanding of a layperson, thereby resulting in the need for an expert witness.
 {¶ 17} Notwithstanding the foregoing analysis, even when the requirement of an expert witness is generally applicable, there will still be some limited circumstances in which the submission of expert testimony will be unnecessary. Specifically, an expert is not needed in a tort action involving a licensed professional when the deficiency of the professional's behavior is within the common understanding of a layperson. See Nalls v. Nystrom
(2004), 159 Ohio App.3d 200, 205. This court has expressly stated that the requirement of an expert only applies when the malpractice claim involves questions of whether the professional properly exercised his professional judgment in a particular situation. Brown v. Morganstern, 11th Dist. No. 2002-T-0164, 2004-Ohio-2930.
 {¶ 18} In the instant action, appellants' complaint against Gehring was based upon the general assertion that she had not responded appropriately when she had received information as to whether Lynn had been driving drunk again and whether Lynn had a physical altercation with Rachael. If the evidence at trial had established that Gehring had taken no action in relation to this information, this court would agree that expert testimony would not be necessary for the jury to properly consider whether she had acted recklessly. However, our review of the record indicates that Gehring did take some actions. Under such circumstances, a question of her professional judgment would be raised. Accordingly, this court holds that the presentation of expert testimony was necessary in this instance in order for a jury to properly consider whether Gehring had engaged in reckless behavior.
 {¶ 19} The trial transcript before us readily shows that appellants did not present any expert testimony as to the standard of care applicable to Gehring and whether she had satisfied this standard in relation to Rachael's case. Thus, since the trial court did not err in granting a directed verdict on this basis, the first assignment in this appeal has no merit.
 {¶ 20} Under their second assignment, appellants argue that the trial court erred in ruling that appellants failed to present any evidence which demonstrated that Gehring was reckless in the performance of her duties. Appellants maintain that the fact that Gehring did not take any steps before late August 1999 to remove Rachael from Lynn's custody was sufficient to raise a factual issue which should have been submitted to the jury.
 {¶ 21} Preliminarily, we would note that a motion for a directed verdict presents a question of law that an appellate court reviews de novo. Nichols v. Hanzel (1996),110 Ohio App.3d 591, 599. When a party makes a motion for directed verdict pursuant to Civ.R. 50(A)(4), a judge must construe the evidence most strongly in favor of the party against whom the motion has been made. A motion for a directed verdict tests the legal sufficiency of the evidence to support a prima facie claim and, thus, presents a question of law. Grau v. Kleinschmidt (1987),31 Ohio St.3d 84, 90. In deciding a motion for a directed verdict, neither the weight of the evidence nor the credibility of the witnesses is to be reviewed. Strother v. Hutchinson
(1981), 67 Ohio St.2d 282, 284. A trial judge can direct a verdict in favor of the moving party only after expressly finding "that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted [by the nonmoving party] and that conclusion is adverse to the [nonmoving party] * * *." Civ.R. 50(A)(4). If there is substantial, competent evidence favoring the nonmoving party, so that reasonable minds might reach different conclusions, the motion must be denied.Ramage v. Cent. Ohio Emergency Serv., Inc. (1992),64 Ohio St.3d 97, 109.
 {¶ 22} As was noted above, appellants' primary claim in their amended complaint alleged that Gehring had acted negligently in supervising Rachael's care while she was living with Lynn during the summer of 1999. However, since Gehring was an employee of Geauga County at that time, the extent of her potential liability would be controlled by the provisions of R.C. 2744.02, this state's "sovereign immunity" statute. In interpreting the statute in the context of a tort action filed against a county children's services board, this court has noted that the functions of such a board are considered governmental in nature; as a result, the board and its employee cannot be held liable for negligent acts.McElrath v. Trumbull Cty. Children's Services Bd. (Sept. 23, 1994), 11th Dist. No. 93-T4-959, 1994 Ohio App. LEXIS 4271. Instead, a children's board and its employee is subject to suit for damages only when reckless behavior has occurred. Id. See, also, Colling v. Franklin Cty. Children Services (1993),89 Ohio App.3d 245.
 {¶ 23} Under Ohio law, a person will be deemed to have acted in a "reckless" manner "`if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical risk to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.'" Thompson v. McNeill (1990),53 Ohio St.3d 102, 1041-05, quoting 2 Restatement of the Law 2d, Torts (1965), at 587, Section 500. In other words, "reckless" behavior involves a perverse disregard for a known risk. Jackson v. Butler Cty.Bd. of Cty. Commrs. (1991), 76 Ohio App.3d 448, 454.
 {¶ 24} In the instant case, appellants' assertion of reckless behavior on the part of Gehring was primarily predicated upon the fact that, on at least three occasions from early June 1999 until late August 1999, she received "reports" from private individuals about Lynn's continuing drinking problem. In the first report, the individual stated that she had seen Lynn driving drunk with Rachael in the car with her. In the last two reports, the individuals indicated that they had seen damage to Lynn's car which would tend to show that she had been driving under the influence again. One of these individuals also reported that he had seen Lynn "driving around" with Rachael and two of her friends in the car.
 {¶ 25} In presenting evidence of these reports at trial, appellants contended that, since the juvenile court's finding of dependency in May 1999 had been on Lynn's prior tendency to drive while under the influence, these new reports should have caused Gehring to believe that Rachael's safety was in jeopardy. In light of this, appellants now contend that the fact that Gehring took no steps to remove Rachael from Lynn's custody at that time was sufficient to show that Gehring acted in a reckless manner.
 {¶ 26} However, a review of the trial transcript shows that, even though Gehring may not have taken any steps to change Rachael's custody arrangement in a more timely fashion, she did not totally ignore the reports. Specifically, Gehring's own testimony indicates that, while she did not have an exact recollection of receiving each report, she could recall that she did discuss the reports in general with her supervisor and Rachael's therapist. Gehring also testified that if the three of them concluded that there was a reason to be concerned for Rachael's safety, she would then ask someone from the county sheriff's department to go to Lynn's residence and see if there was any problem.
 {¶ 27} Although not expressly stated in Gehring's testimony, the sole reasonable inference to be drawn from her statements is that, if a sheriff's deputy had reported that Rachael's safety was in jeopardy, Gehring would have taken additional steps to protect her.[2] To this extent, it cannot be said that, by only notifying the sheriff's department after consulting with her superior, Gehring was not taking any action in behalf of Rachael and was completely disregarding the reports. While it is certainly arguable that sending the deputy to the residence was not a sufficient response once Gehring had received the third report, this point would only raise the issue of whether she had been negligent in her supervision of Rachael. However, this court holds that no reasonable person would conclude that, after consulting with her superior and Rachael's therapist on three occasions, Gehring's act of dispatching a deputy to the residence created an unreasonable risk to Rachael's safety that was substantially greater than the risk created by a mere negligent act.
 {¶ 28} Appellants' assertion of reckless behavior was also based upon the fact that, in early August 1999, Gehring received a separate report that Lynn and Rachael had had some type of physical altercation. In raising this point under the assignment of error, though, appellants admit that Gehring tried to remedy this situation by having Lynn and Rachael sign an "agreement" not to strike each other. While the effectiveness of this remedy might be debatable, it again cannot be said that Gehring disregarded the situation to such an extent that her actions could be characterized as perverse.
 {¶ 29} Even when Gehring's testimony is construed in a manner most favorable to appellants, it is still legally insufficient to establish that her conduct or performance of her duties in regard to Rachael was reckless. Accordingly, even if the trial court had not determined that it was necessary for appellants to present expert testimony as to the standard of care, its decision to grant a directed verdict could have been based solely upon the lack of evidence on the issue of the alleged breach of the duty of care. As a result, appellants' second assignment of error is also without merit.
 {¶ 30} Under their third assignment, appellants submit that the trial court erred in concluding that there was insufficient evidence to support a factual finding of proximate cause between any acts or omissions of Gehring and injury suffered by Rachael. As to this argument, this court would simply state that, in light of our holding that Gehring did not engage in any reckless behavior, the question of proximate cause has now become moot. Pursuant to App.R. 12(A)(1)(c), it is not necessary for us to address the merits of the third assignment.
 {¶ 31} For the foregoing reasons, appellants' first two assignments in this appeal are not well-taken. In addition, appellants' third assignment is overruled as moot. Thus, the judgment of the Geauga County Court of Common Pleas is affirmed.
COLLEEN M. O'TOOLE, J., concurs,
WILLIAM M. O'NEILL, J., dissents with Dissenting Opinion.
[1] We note that appellants have raised no arguments per App.R. 16 with regard to the other appellees in this case. Appellants' issues deal solely with granting a directed verdict in favor of Gehring. Thus, since it is not necessary to review the merits of the trial court's decision as to the other three appellees, our opinion will focus solely upon Gehring.
[2] Gehring did not provide any testimony concerning the type of report the sheriff's deputy would give after visiting Lynn's residence. But appellants also presented as an exhibit at trial a copy of a case summary Gehring produced in January 2000. In this report, Gehring stated that, after each visit to the residence, the sheriff's department would indicate that Lynn appeared to be sober and that there were no problems in the home.