[Cite as *M.F. v. Perry Cty. Childrens Serv.*, 2019-Ohio-5435.]

COURT OF APPEALS
PERRY COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| M.F. A MINOR, BY KARISMA | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellant | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | Case Nos. 19-CA-0003 |
| | : | 19-CA-0004 |
| PERRY COUNTY CHILDREN | : | |
| SERVICES, ET AL. | : | |
| | : | |
| Defendants-Appellees | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Perry County Court of
                                 Common Pleas, Case No. 17CV263



JUDGMENT:                        AFFIRMED




DATE OF JUDGMENT ENTRY:          December 30, 2019




APPEARANCES:

For Plaintiff-Appellant:                    For Defendants-Appellees:

HARVEY ABENS IOSUE CO., L.P.A.              ISAAC WILES BURKHOLDER, ET AL.
DAVID L. HARVEY IIII                        MATTHEW S. TEETOR
MATTHEW B. ABENS                            J. STEPHEN TEETOR
JASON T. HARTZELL                           Two Miranova Pl., Suite 700
3404 Lorain Ave.                            Columbus, OH 43215
Cleveland, OH 44113

*Delaney, P.J.*

{¶1} Plaintiff-appellant M.F. appeals from the March 15, 2019 Entry on Motion for Summary Judgment filed by Children Services and Employees of the Perry County Court of Common Pleas. Defendants-appellees are Perry County Children Services and present or former employees Amy L. Frame, Wendy Wion, and Rick Glass.

{¶2} This is a consolidated appeal of 5th Dist. Perry No. 19-CA-0003 and 5th Dist. Perry No. 19-CA-0004.

## FACTS AND PROCEDURAL HISTORY

{¶3} The following facts are adduced from the parties' Civ.R. 56 evidence. A thorough discussion of the facts may also be found at *M.F. v. Perry Cty. Children & Family Services*, S.D.Ohio No. 2:15-CV-2731, 2017 WL 6508573, affirmed*, 725 Fed.Appx. 400 (6th Cir.2018).

{¶4} K.F. is the Mother of two minor children, M.F. ["Son"] and H.F. ["Daughter"]. Perry County Children Services [the "Agency"] removed the children from Mother's care in August 2013.

{¶5} The children were ultimately placed in the kinship care of Tim and Wendy Snider. Mother approved placement with the Sniders, as did the Perry County Probate Court, upon completion of a home study and background checks. The children knew the Sniders before the placement and had a bonded relationship with them. The Sniders agreed to take the children to all scheduled visitations and appointments. The placement allowed the children to stay together, in the same school district, and in the same town as Mother.

{¶6} During the placement, the Sniders lived in a mobile home with their grandson, John M. Bush. Bush shared a bedroom with Son, with each sleeping in a separate bunk bed. The evidence demonstrated Bush showered with Son several times at a communal campground.

{¶7} Appellee Wendy Wion was the family's caseworker at the Agency from January 2014 until September 2014. Wion completed home visits and reported the children to be happy and safe in the kinship placement. Wion's reports were generally positive, although not uniformly; Wion reported the Sniders requested counseling for Son due to anger problems, that Daughter sustained a dog bite, and that Daughter was observed masturbating under a blanket in the living room of the residence. The latter incident did not raise any "red flags" for Wion.

{¶8} The Sniders testified at deposition that they thought Wion knew Bush lived with them. Wion testified, however, that she was told each of the children had their bed in their own bedroom and documented this belief in her notes. Wion testified that she observed Bush at the home only once and was told he was "visiting."

{¶9} Mechelle Siemer, a family friend, provided respite care for the children. In Spring 2014, Daughter complained about a rash in her pelvic area. Siemer also noticed negative changes in Son's behavior. In spring or summer 2014, Siemer contacted the Agency to ask about counseling for Son. At some point, Siemer approached the probate judge at a community function and told her that children in Siemer's respite care were being sexually abused. Siemer believed the judge left a voice mail message for Wion asking her to call back.

{¶10} Approximately one week later, Siemer contacted the Agency to speak to Wion, but was turned away by a receptionist. Siemer also testified that she told the Agency the children found a Playboy magazine at the Sniders' home or camper and looked at it.

{¶11} Wendy Snider testified that around the time the children found the magazine, Son told her Bush "tried to stick…his [Bush's] thing…in his [Son's] butt." Snider did not believe Bush would hurt the children. Son recanted the story soon thereafter and Snider did not report the allegation.

{¶12} On September 10, 2014, Siemer called Wion and asked to meet with her regarding the children. Wion suggested she could meet Siemer at a home visit at the Sniders' the next day. Siemer did not show.

{¶13} On September 17, 2014, the children disclosed to Siemer that Bush had sexually abused them. Siemer immediately called police, and called Wion and the probate judge the next day.

{¶14} The same day, the Agency interviewed the children at school, removed them from kinship placement with the Sniders, and placed them in foster care.

{¶15} The children were eventually reunited with Mother.

{¶16} Bush was ultimately convicted of two counts of gross sexual imposition pursuant to R.C. 2907.05(A)(4) and sentenced to a prison term of nine years.

{¶17} Mother and the children filed suit on November 6, 2017, against a number of defendants, including but not limited to appellees in the instant case: the Agency,

Frame, Wion, and Glass.[1]  Glass is the Director of the Agency; Frame is a supervisor of caseworkers.

{¶18} The counts against appellees include violations of R.C. 2151.421—failure to investigate allegations of sexual abuse [Count I]; reckless misconduct [Count V]; and spoliation of evidence [Count VII]; violation of R.C. 149.351—public records law [Count VIII].

{¶19} The Agency, Frame, Wion, and Glass answered on December 7, 2017.

{¶20} On January 22, 2018, the trial court granted a motion by the Agency, Frame, Wion, and Glass to sever from the other defendants. The trial court denied a motion to stay pending the outcome of the federal litigation.

{¶21} On July 19, 2018, the Agency, Frame, Wion, and Glass filed a motion for summary judgment seeking to dismiss the counts against them.

{¶22} Appellant raises one assignment of error:

**ASSIGNMENT OF ERROR**

{¶23} "THE TRIAL COURT ERRED IN GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT."

**ANALYSIS**

{¶24} In their sole assignment of error, appellants argue the trial court erred in granting summary judgment in favor of the Agency and its employees.  We disagree.

---

[1] The remaining defendants, not parties to the instant appeal, are Wendy and Tim Snider, John Bush, and Probate Court Judge Luann Cooperrider. Cooperrider's motion to dismiss was granted on January 26, 2018.

*Standard of review for summary judgment*

{¶25} We review cases involving a grant of summary judgment using a de novo standard of review. *Bonacorsi v. Wheeling & Lake Erie Ry. Co.,* 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, at ¶ 24. Summary judgment is appropriately granted when "'(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.'" *Esber Beverage Co. v. Labatt USA Operating Co.,* 138 Ohio St.3d 71, 2013-Ohio-4544, 3 N.E.3d 1173, ¶ 9, citing *M.H. v. Cuyahoga Falls,* 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261, ¶ 12, internal citation omitted; Civ.R. 56(C).

{¶26} A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.,* 67 Ohio St.2d 427, 433, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning–Ferris Inds. of Ohio, Inc.,* 15 Ohio St.3d 321, 323, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.,* 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist. 1999).

{¶27} The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record

which demonstrates absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Wentling v. David Motor Coach Ltd.*, 5th Dist. Stark No. 2017CA00190, 2018-Ohio-1618, --N.E.3d--, ¶ 23, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). Once the moving party meets its initial burden, the burden shifts to the non-moving party to set forth specific facts demonstrating a genuine issue of material fact does exist. *Id.* The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary materials showing a genuine dispute over material facts. *Downtown Enterprises Co. v. Mullet*, 5th Dist. Holmes No. 17CA016, 2018-Ohio-3228, ¶ 50, citing *Mitseff v. Wheeler,* 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988).

{¶28} Moreover, as noted by this Court in *Matrix Acquisitions, LLC v. Styler*, 5th Dist. Tuscarawas No. 2010AP040014, 2010-Ohio-5343, 2010 WL 4345754 at ¶ 17:

> The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied**.**

*Sovereign immunity*

{¶29} Appellants raise a number of claims against the Agency and its employees arising from their alleged failure to investigate sexual abuse allegations which they knew

or should have known of. Appellees assert the Agency is immune pursuant the Political Subdivision Tort Liability Act, which affords political subdivisions immunity from certain types of actions. Determining whether a political subdivision is immune from liability involves a three-tiered analysis. *Thompson v. Buckeye Joint Vocational School Dist.*, 2016-Ohio-2804, 55 N.E.3d 1, ¶ 16 (5th Dist.), citing *Cater v. Cleveland,* 83 Ohio St.3d 24, 28-29, 697 N.E.2d 610 (1998), abrogated on other grounds, *M.H. v. Cuyahoga Falls*, 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261. In the first tier, R.C. 2744.02(A)(1) provides broad immunity to political subdivisions and states in pertinent part, "a political subdivision is not liable for damages in a civil action for injury, death or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." In the second tier of the analysis, R.C. 2744.02(B) provides five exceptions that may lift the broad immunity provided for in R.C. 2744.02(A)(1). In the third tier, immunity may be reinstated if the political subdivision can demonstrate the applicability of one of the defenses found in R.C. 2744.03(A)(1) through (5). See, e.g., *Cramer v. Auglaize Acres,* 113 Ohio St.3d 266, 270, 2007-Ohio-1946, 865 N.E.2d 9, at ¶ 16.

{¶30} Whether a political subdivision is entitled to this statutory immunity is a question of law for a court's determination. *Henney v. Shelby City School Dist.*, 5th Dist. Richland No. 2005 CA 0064, 2006-Ohio-1382, ¶ 28, citing *Conley v. Shearer*, 64 Ohio St.3d 284, 291, 595 N.E.2d 862 (1992). Applying the first tier in the instant case, operation of a children's agency is statutorily defined as a governmental function pursuant to R.C. 2744.01(C)(2)(m) and (o). The functions of the Agency are therefore governmental functions for the purposes and applicability of Chapter 2744.

{¶31} In the second tier of the analysis, we must examine whether any of the five exceptions listed in R.C. 2744.02(B) lift the broad immunity provided for in R.C. 2744.02(A)(1). Relevant to the instant case, R.C. 2744.02(B) states in pertinent part:

Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

* * * *.

(5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because that section provides for a criminal penalty, because of a general authorization in that section that a political subdivision may sue and be sued, or because that section uses the term "shall" in a provision pertaining to a political subdivision.

{¶32} Immunity also extends to employees of political subdivisions under R.C. 2744.03(A)(6), with three exceptions. Relevant here, employees can lose their immunity

for acting "with malicious purpose, in bad faith, or in a wanton or reckless manner." *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, ¶ 48, citing R.C. 2744.03(A)(6)(b).

*Alleged exception to sovereign immunity: R.C. 2151.421(A)(1)*

{¶33} Appellants argue R.C. 2151.421(A)(1) operates as an exception to the Agency's blanket immunity. That section provides that certain persons acting in an official capacity, including any administrator or employee of a public children services agency, who knows or has reasons to suspect that a child has suffered abuse or neglect, is required to report the abuse or neglect to proper authorities. R.C. 2151.421(A)(1)(a) and (b). Moreover, a public children services agency is required to investigate any such report within 24 hours and to take certain prescribed actions. R.C. 2151.421(G).

{¶34} The Agency responds that pursuant to *Marshall v. Montgomery Cty. Children Serv. Bd.*, 92 Ohio St.3d 348, 2001-Ohio-209, 750 N.E.2d 549, "within the meaning of R.C. 2744.02(B)(5) and 2744.03(A)(6)(c), R.C. 2151.421 does not expressly impose liability for failure to investigate reports of child abuse." Therefore, even if a children services agency failed to investigate a report, the agency is insulated from liability by sovereign immunity. *Id.* We agree with the trial court that the Agency is immune from liability for alleged violations of R.C. 2151.421.

{¶35} Appellants acknowledge *Marshall* and implicitly concede the Agency is properly immune from complaints of failure to investigate, but argue employees Frame, Glass, and Wion may still be liable if they were reckless in violating R.C. 2151.421. "Recklessness" in the context of R.C. 2744.03(A)(6) means the employees must have "perversely disregarded a known risk" in order to lose immunity. *O'Toole v. Denihan*, 118

Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, ¶ 73; *Poe v. Hamilton*, 56 Ohio App.3d 137, 138, 565 N.E.2d 887 (12th Dist.1990).

{¶36} Applying the definition of "recklessness" to the evidence before us, we note that Glass is the Agency director and had no involvement with Mother or the circumstances of the case. We are unable to find any reason why he is named in the case, other than because he happens to be the director of the Agency. Siemer admittedly had no contact with Glass. He personally had no information about the children at any time giving him reason to believe they were being abused. We find no evidence Glass was reckless with regard to the children and appellants do not point to any such evidence. Similarly, as the supervisor of Agency caseworkers, Frame did not have contact with the children or Siemer before September 2014. We are unable to identify any evidence that would establish Frame was reckless regarding the safety of the children.

{¶37} Finally, Wion was the family's caseworker and did have contact with the children, Siemer, and the Sniders. Wion's conversation with Siemer consisted of a request to meet face-to-face, but Siemer did not articulate why she wanted to meet. The evidence indicates this phone call occurred on September 10, 2014, shortly before the children disclosed the abuse to Siemer and were subsequently removed from the Sniders' care. Wion agreed to meet Siemer, but Siemer didn't show up for the meeting. Wendy Snider believed Wion knew Bush lived at the mobile home, but Wion testified she was told each child had their own bed in their own bedroom, and she saw Bush at the residence only once, when she was told he was a grandson who was visiting.

{¶38} There is no basis upon this evidence to find Wion perversely ignored a known risk that the children were being abused.

{¶39} We also find the record is devoid of evidence supporting appellant's premise that the Agency and its staff should have suspected the children were being abused. Son's anger issues are "red flags" of sexual abuse only in retrospect; even Siemer, who had a close relationship with Son and interacted with him several times per week, was not aware Son was being abused nor was she suspicious that he was being sexually abused prior to disclosure in September 2018. Regarding Daughter, Siemer suspected sexual abuse but that Son was the potential perpetrator because the two slept in the same bed at her house. Inexplicably, not only did Siemer not tell anyone of her suspicion, but she continued to allow the two to sleep together at her house. Nor do we find the single incident of Daughter found masturbating to prove that anyone should have suspected sexual abuse.

{¶40} The Civ.R. 56 evidence documenting the activities of the Agency relative to the children indicates the Agency had regular contact with the children in the office, in addition to home visits at the Sniders' residence. A caseworker met with each child alone and the children were described as happy and safe, bonded to Wendy Snider, and doing well in school. The call from Siemer is documented in the Agency's activity logs, but notes Siemer only agreed to speak face-to-face and then failed to appear for a scheduled meeting.

{¶41} We note with approval the following findings of the District Court in *M.F. v. Perry Cty. Children & Family Services*, S.D.Ohio No. 2:15-CV-2731, 2017 WL 6508573, *6–7, affirmed, 725 Fed.Appx. 400 (6th Cir.2018):

> The record does not contain direct evidence that the PCCS
>
> Employee Defendants were aware of facts from which the inference

could be drawn that a substantial risk of serious harm to the Minor Plaintiffs existed or that these defendants drew that inference. Prior to September of 2014, Glass, PCCS's Executive Director, was personally involved with the Minor Plaintiffs' case on only one occasion, when Ferreira sought permission for a special visit with the Minor Plaintiffs after they had been placed with the Sniders. Glass Aff. ¶ 2, ECF No. 81-1, PAGEID # 1098; Glass Dep., ECF No. 96-4, PAGEID # 2119. There is no evidence that allegations of abuse were conveyed to Glass on that occasion. Similarly, Frame, Wion's supervisor, avers that she does not recall any direct contacts with the Minor Plaintiffs and that she had no knowledge or suspicion that they were being abused prior to September of 2014. Frame Aff., ECF No. 81-2, PAGE ID # 1247.

Moreover, there is no evidence that Wion knew about the risk of abuse prior to September 18, 2014. Wion Dep., ECF No. 81-6, PAGEID # 1496. Wion testified that she was first informed of the abuse allegations when Siemer called her on that date. *Id.,* see *also,* PAGEID ## 1492-93. Although Siemer may have harbored suspicions of sexual abuse prior to that date, the record contains no evidence that Seimer informed Wion—or any other PCCS employees—about her suspicions before then. Seimer testified that she communicated with Defendant PCCS prior to September 2014 about obtaining counseling for the Minor Plaintiffs.

Seimer Dep., ECF No. 81-4, PAGEID ## 1343-44, 1366-70. Seimer further testified that she did not learn that Bush was abusing the Minor Plaintiffs until they confided in her on September 17, 2014. *Id.* at PAGEID ## 1338, 1347. Seimer also testified that September 18, 2014, was the first time that she told anyone who worked for Defendant PCCS that she thought that the Minor Plaintiffs were being sexually abused. *Id.* at PAGEID ## 1376-77. The Minor Plaintiffs were removed from the kinship placement with the Sniders that same day.

Although Seimer did not tell any of the PCCS Employees about any suspicions of sexual abuse before September 18, 2014, she now contends that she told [Probate] Judge Cooperrider that the Minor Plaintiffs were being abused in the Spring of 2014. Assuming this is true, the record does not contain evidence that [Probate] Judge Cooperrider ever relayed Seimer's allegations to any of the PCCS Employee Defendants. Accordingly, any knowledge that [Probate] Judge Cooperrider may have possessed cannot be imputed to them. Moreover, one of the kinship providers, Wendy Snider, was aware prior to September of 2014, of facts from which an inference of substantial risk to the Minor Plaintiffs could be drawn. Wendy Snider Dep., ECF No 81-9, PAGEID ## 1712-14. But she never told PCCS about these facts. *Id.* at PAGEID # 1718. Thus, her

knowledge also cannot be imputed to the PCCS Employee Defendants.

Nor does any circumstantial evidence show that the risk of abuse was so obvious that the PCCS Employee Defendants must have known about it. Plaintiffs suggest that Wion must have known that the Sniders' grandson stayed at their mobile home. But even if circumstantial evidence of Bush's presence was so obvious that Wion must have known he was staying there, it does not follow that Wion must have known that he presented a substantial risk of sexual abuse. Plaintiffs point to no evidence that the PCCS Employee Defendants knew that Bush was a sexual predator.

{¶42} Appellees argue appellants should be estopped from re-litigating the issues of fact in this case. According to the United States Supreme Court in *Allen v. McCurry* (1980), 449 U.S. 90, "[U]nder collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Fragoso v. Hydra-Matic Div. Chevrolet Motors, Inc.*, 6th Dist. Lucas No. C.A. L-86-033, 1986 WL 12846, *4, *Id.* at 93. According to the Sixth Circuit, "[C]ollateral estoppel requires that the precise issue in the later proceedings have been raised in the prior proceeding, that the issue was actually litigated, and that the determination was necessary to the outcome." *Id., citing Spilman v. Harley* (C.A.6, 1981), 656 F.2d 224, 228.

{¶43} We conclude that we need not determine whether collateral estoppel precludes appellants' arguments in the instant case. We have reviewed the record for

ourselves and find the Agency is immune from appellants' claims. Further, we find appellants have not demonstrated that the employees' actions alleged in Counts I and V were done with a malicious purpose, in bad faith, or in a willful and wanton or reckless manner to constitute an exception to immunity.

{¶44} The fact of the sexual abuse was disclosed to Siemer on September 17, 2014. Until her report to the Agency on September 18, 2014, the Agency and its employees had no direct or circumstantial knowledge that the children were being sexually abused. The employees did not violate R.C. 2151.421. Prior to September 18, 2014, the employees did not disregard a known risk that Bush would sexually assault the children. There is no genuine issue of material fact that the employees breached their duty to investigate pursuant to R.C. 2151.421(F)(1) [Count I].

{¶45} There is no evidence the employees engaged in reckless misconduct regarding the children because the employees had no direct or circumstantial knowledge of sexual abuse. Additionally, issues of overstaffing and mismanaged caseloads are not the responsibilities of the employees but of the Agency, and there is no evidence that the Agency's understaffing issues contributed to the employees' actions in this case. We find no issues of material fact as to appellants' allegations in Count V.

{¶46} In Count VII, appellants allege the employees willfully destroyed public records of the sexual abuse allegations. In Count VIII, appellants allege Frame violated R.C. 149.351 by destroying her notes about discussions with caseworkers who reported to her. The elements of a claim for interference with or destruction of evidence are (1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant

designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts. *Smith v. Howard Johnson Co.*, 67 Ohio St.3d 28, 29, 1993-Ohio-229, 615 N.E.2d 1037.

{¶47} In *M.F. v. Perry Cty. Children & Family Services*, S.D.Ohio No. 2:15-CV-2731, 2017 WL 6508573, *9, *aff'd,* 725 Fed.Appx. 400 (6th Cir.2018), the District Court observed:

> * * * Wion's supervisor, Frame, testified at deposition that she regularly made handwritten notes during monthly meetings with caseworkers, including Wion. Frame Dep., ECF 94-2, PAGEID # 2231. Frame used these notes for training caseworkers that she supervised, but her notes were never utilized by other PCCS employees or caseworkers to document cases. Frame Aff. ¶¶ 5, 6, ECF No. 59-1, PAGEID # 483. It was Frame's practice to shred those notes after case files were closed because they contained confidential information. Frame Dep., ECF 94-2, at PAGEID ## 2231-33. Frame believes that she would have shredded any such notes that she might have made during meetings about the Minor Plaintiffs when their case file was closed in August of 2015. *Id.* at PAGEID # 2232. Plaintiffs assert that these notes would have helped them prove that Seimer contacted PCCS on multiple occasions to complain that the Minor Plaintiffs were being sexually abused, and they allege spoliation.

Frame testified she keeps handwritten notes when she meets with caseworkers to discuss their cases. When the case is closed, she shreds her notes. She shredded her notes in the instant case in 2015 when the case closed. She did not enter her personal

notes into the Agency database because it would have been duplicate information. We find the Agency employees did not commit spoliation by destroying Frame's notes. Moreover, under Ohio law, the general rule is that "a public official's personal notes made for his or her own convenience are not public records." *Hunter v. Ohio Bur. of Workers' Comp.*, 10th Dist. Franklin No. 13AP-457, 2014-Ohio-5660, ¶ 16, citing *State ex rel. Verhovec v. Marietta,* 4th Dist. Washington No. 12CA32, 2013–Ohio–5415, ¶ 25. We find the employees did not destroy or commit spoliation of public records as alleged in Counts VII and VIII.

{¶48} Having considered the evidence in the light most favorable to appellants, we conclude there are no genuine issues of material fact upon which reasonable minds could agree. Appellees the Agency and its employees Glass, Frame, and Wion are entitled to judgment as a matter of law. Appellants' sole assignment of error is overruled and the judgment of the Perry County Court of Common Pleas is affirmed.

## CONCLUSION

{¶49} Appellants' sole assignment of error is overruled and the judgment of the Perry County Court of Common Pleas is affirmed.

By: Delaney, P.J.,

Baldwin, J. and

Wise, Earle, J., concur.