[Cite as *Dismukes v. Ashtabula Cty. Children Servs. Bd.*, 2024-Ohio-1111.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

DANIEL DISMUKES, et al.,

      Plaintiffs-Appellees,

- vs -

ASHTABULA COUNTY
CHILDREN SERVICES BOARD, et al.,

      Defendants-Appellants.

CASE NO. 2023-A-0042

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2022 CV 00647

**O P I N I O N**

Decided: March 25, 2024
Judgment: Affirmed in part, reversed in part, and remanded

*Christopher M. Newcomb*, 213 Washington Street, Conneaut, OH 44030 (For Plaintiffs-Appellees).

*Kenneth E. Smith* and *Michael P. Quinlan*, Mansour Gavin LPA, North Point Tower, 1001 Lakeside Avenue, Suite 1400, Cleveland, OH 44114 (For Defendants-Appellants).

MATT LYNCH, J.

{¶1}   Appellants, the Ashtabula County Children Services Board, Michael Chicarell, Tania Burnett, and Salina Brown appeal the judgment of the Ashtabula County Court of Common Pleas, denying their Joint Motion to Dismiss on the grounds of immunity.  For the following reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this Opinion.

{¶2}   On November 1, 2022, appellees, Daniel and Kristy Dismukes along with their adopted child, Z.D., filed a Complaint for Damages and Violations of the Ohio Administrative Code against the appellants.  The Complaint was based on the appellees'

removal of Z.D. from the Dismukes' custody. On August 19, 2021, the Akron Children's Hospital reported to ACCSB concerns regarding Z.D.'s welfare as a result of Daniel and Kristy not administering the anticonvulsant/seizure medicine Topamax to Z.D. The Complaint further alleged that, on August 25, 2021, Z.D. was forcibly removed from Daniel and Kristy's custody without cause. ACCSB sought temporary custody of Z.D. on the grounds of neglect and dependency. The legal proceedings involving Z.D. were not concluded until November 3, 2021, when ACCSB dismissed its Complaint for Temporary Custody.

{¶3} The Dismukes' Complaint raised the following claims against the appellants:

12. On August 24, 2021, Caseworker [Chicarell] met with Parents and specifically alleged medical neglect occurring by Parents even when Parents indicated the Child had seen his endocrinologist in July of 2021 and pediatrician in March of 2021, both doctors of which evaluated the Child, and were aware of the concerns of the Parents [regarding Topamax], and were both mandatory report[er]s if the Parents were being wrongful in any way, and made no such reports regarding Parents, and viewed the Child as happy and improving at the time, contrary to the false reporting by Hospital, Caseworker and ACCSB.

* * *

**FIRST CLAIM FOR RELIEF**
**(Civil Malicious Prosecution)**

* * *

74. Defendants, jointly and severally, maliciously instituted proceedings against Plaintiffs and lacked probable cause for the filing of the August 26, 2021 Verified Complaint for Temporary Custody.

75. The prior proceedings were terminated in favor of Plaintiffs as it was ultimately dismissed by ACCSB.

2

76. Plaintiffs' person and civil liberties were improperly and egregiously seized during the [course] of these proceedings.

* * *

## SECOND CLAIM FOR RELIEF
### (General Negligence)

* * *

79. Defendants, jointly and severally, owed Plaintiffs a duty of care in reporting, second opinions and follow-up discussions concerning the health and safety of the Child, and most importantly, owed a duty to Plaintiffs to conduct themselves professionally.

80. Defendants breached the duty of care required to Plaintiffs and were the proximate cause of Plaintiffs' harm.

* * *

## FOURTH CLAIM FOR RELIEF
### (Invasion of Privacy)

* * *

87. Defendants, jointly and severally, wrongfully intruded into the private activities, medical information, and lives of Plaintiffs by failing to adhere to their concerns for the Child's well-being, and ongoing medical issues with Topamax and the ketogenic diet.

88. Such intrusion caused mental suffering and anguish as the special needs and severely impaired Child was physically removed from the Parents' household, using police to effectuate the same, while the Child was not properly clothed, and while the other minor children of the household had to watch in horror.

89. Such intrusion was shameful and humiliating for persons of ordinary sensibilities and entirely preventable by Defendants.

* * *

## FIFTH CLAIM FOR RELIEF
### (Loss [of] Filial Consortium)

* * *

3

Case No. 2023-A-0042

92. Defendants, jointly and severally, utterly denied the Parents' ability to maintain a parent-child relationship, including but not limited to affection, companionship, solace, comfort, and general care, as well as caused general mental anguish to all members of Parents' household.

93. Defendants made continual delayed attempts to reunite the Child with the Parents, made false reports to outside state agencies about Parents and attempted to deny Parents' access to medical information of the Child.

94. The Child was forced into two (2) separate foster care situations for almost four (4) months until ultimate dismissal of the matter by ACCSB.

* * *

## SIXTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress/Reckless and/or Negligent Infliction of Emotional Distress)

* * *

97. Defendants, jointly and severally, intentionally, recklessly and/or negligently caused emotional distress to Plaintiffs and knew or should have known that its actions of forcibly removing a special needs Child from his known and appropriate caring Parents would result in serious emotional distress.

98. Defendants' conduct was so extreme and outrageous as it provided Parents less than 24 hours after its initial meeting with Parents and indicating to Parents that it was taking the least restrictive action by simply removing the Child forcibly.

99. Defendants' conduct was intolerable in a civilized community and caused mental distress and anguish on Plaintiffs wherein no reasonable person should or could endure the same.

* * *

## SEVENTH CLAIM FOR RELIEF
### (Violations of Ohio Administrative Code 5101:2 – Ohio Department of Job & Family Services, Division of Social Services)

* * *

4

Case No. 2023-A-0042

102. ACCSB violated the several requirements under the Ohio Administrative Code Section 5101:2 regarding the appropriate intake procedures, ongoing services, alternative response procedures, reporting procedures, removal of children, placement setting requirements, and assessments.

* * *

104. ACCSB under all claims of relief described herein, breached its duties required under the * * * provisions and sections of the Ohio Administrative Code.

{¶4} On December 20, 2022, the appellants filed a Joint Motion to Dismiss pursuant to Civil Rule 12(B)(6). Appellants argued that the allegations raised in the seven claims identified above "all relate to Ashtabula County Defendants' quasi-judicial functions and [the] harm incurred as a result of the judicial custody proceedings," and, therefore, "Ashtabula County Defendants are entitled to absolute immunity as to each of Plaintiffs' claims." The appellants argued, "[i]n the alternative, even if Ashtabula County Defendants were not entitled to absolute immunity for each of Plaintiffs' claims, they are entitled to qualified immunity pursuant to R.C. § 2744."

{¶5} On July 19, 2023, the trial court denied the Motion to Dismiss, ruling as follows: "Any fair reading of the Plaintiff's Complaint infers that the Plaintiff contends that the ACCSB and its agents and employees['] acts were manifestly outside the scope of their employment and/or official responsibilities, or were done with malicious purpose, in bad faith, or in a wanton or reckless manner. As such, if the Plaintiff would be able to establish that the Defendants['] conduct rose to that level, [then] pursuant to the terms of ORC 2744.03(A)[(6)] the conduct would be excepted from the grant of immunity set forth in that section."

5

Case No. 2023-A-0042

{¶6} On August 3, 2023, the appellants filed a Notice of Appeal. On appeal, they raise the following assignments of error:

[1.] Whether the Trial Court erred when it failed to make a ruling on Appellants' entitlement to absolute immunity when considering Appellants' Motion to Dismiss.

[2.] Whether the Trial Court erred in denying political subdivision immunity under R.C. § 2744 to Appellants in its ruling denying Appellants' Motion to Dismiss.

The assignments of error will be considered jointly.

{¶7} Preliminarily, the appellants argue that the trial court's judgment must be dismissed because the trial court did not analyze the issue of whether they were entitled to absolute immunity. The failure to expressly analyze the issue of absolute immunity in the context of a motion to dismiss is not error. The Supreme Court of Ohio has held: "When a court dismisses a complaint pursuant to Civ.R. 12(B)(6), it makes no factual findings beyond its legal conclusion that the complaint fails to state a claim upon which relief can be granted. Thus, the court does not assume the role of factfinder and has no duty to issue findings of fact and conclusions of law." *State ex rel. Drake v. Athens Cty. Bd. of Elections*, 39 Ohio St.3d 40, 41, 528 N.E.2d 1253 (1988). We see no reason why the same should not apply when a court denies a motion to dismiss inasmuch as no other findings are required beyond the legal conclusion that the complaint does state a claim upon which relief can be granted. In the absence of any indication to the contrary, we will presume the trial court rejected the appellants' absolute immunity argument when it denied the motion to dismiss. *Olmsted Falls v. Bowman*, 8th Dist. Cuyahoga No. 94000, 2010-Ohio-5767, ¶ 13 ("we must presume that when ruling on the motion [to dismiss], the court considered the selective enforcement argument but found no merit to it").

6

Case No. 2023-A-0042

**{¶8}** In regard to motions to dismiss, the Supreme Court of Ohio holds:

> A Civ.R. 12(B)(6) motion to dismiss a complaint for failure to state a claim upon which relief can be granted tests the sufficiency of a complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992). In order for a trial court to dismiss a complaint under Civ.R. 12(B)(6), it "must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling [her] to recovery." *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus (following *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also LeRoy v. Allen, Yurasek & Merklin*, 114 Ohio St.3d 323, 2007-Ohio-3608, 872 N.E.2d 254, ¶ 14. Reviewing courts must accept the material allegations in the complaint as true, *Maitland v. Ford Motor Co.*, 103 Ohio St.3d 463, 2004-Ohio-5717, 816 N.E.2d 1061, ¶ 11, and construe the allegations and all reasonable inferences drawn therefrom in favor of the nonmoving party, *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 418, 650 N.E.2d 863 (1995).

*Doe v. Greenville City Schools*, 171 Ohio St.3d 763, 2022-Ohio-4618, 220 N.E.3d 763, ¶ 8. "Appellate review of a trial court's decision to dismiss a complaint pursuant to Civ.R. 12(B)(6) is de novo." *Ohio Bur. of Workers' Comp. v. McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, 956 N.E.2d 814, ¶ 12.

**{¶9}** The appellants claim that, "[i]n Ohio," caseworkers are entitled to absolute immunity based upon the sort of allegations raised in the Complaint. In support of this claim, the appellants cite to several federal cases from the Sixth Circuit and a district court case from Ohio: *Bauch v. Richland Cty. Children Servs.*, 733 Fed.Appx. 292 (6th Cir.2018); *Pittman v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 640 F.3d 716 (6th Cir.2011); *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416 (6th Cir.2001); *Holloway v. Brush*, 220 F.3d 767 (6th Cir.2000); and *McIntosh v. Butler Cty. Children's Servs. Bd.*, S.D.Ohio No. 1:09-cv-274, 2011 WL 6091764. We note that all of these cases involved claims for damages based on the deprivation of constitutional rights by state actors

7

Case No. 2023-A-0042

pursuant to the Civil Rights Act of 1871, i.e., they were Section 1983 actions. None of these cases stand for the proposition that caseworkers in Ohio are entitled to absolute immunity for the sort of state law claims raised by the Dismukes. In a case not cited by the appellants, *Scharbrough v. S. Cen. Ohio Job & Family Servs.*, S.D.Ohio No. 2:20-cv-4527, 2021 WL 2314848, the district court acknowledged that "[t]he Supreme Court of Ohio has yet to determine the parameters of immunity for caseworkers and has not addressed the availability of quasi-judicial immunity for these actors." *Id.* at *11. Thus, a federal court confronting the issue of whether caseworkers are entitled to absolute immunity against state law claims "must predict how the state's highest court would resolve the matter." *Id.*

{¶10} We begin our analysis by considering the substance and scope of the doctrine of "absolute immunity," otherwise known as absolute quasi-judicial immunity.

{¶11} The common law doctrine of "absolute immunity" provides for "the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, * * * even when the judge is accused of acting maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.'" (Citation omitted.) *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). The same absolute immunity is accorded to prosecutors "based upon the same considerations that underlie the common-law immunities of judges and grand jurors acting within the scope of their duties," i.e., "harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his

8

decisions instead of exercising the independence of judgment required by his public trust." *Imbler v. Pachtman*, 424 U.S. 409, 422-423, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

{¶12} The absolute immunity enjoyed by prosecutors does not apply to all actions performed by a prosecutor:

> Absolute prosecutorial immunity is justified "only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct." *Burns* [*v. Reed*], 500 U.S. [478,] at 494, 111 S.Ct. 1934[, 114 L.Ed.2d 547 (1991)]. "Prosecutors are entitled to absolute immunity for conduct 'intimately associated with the judicial phase of the criminal process.'" *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Prosecutors are not absolutely immune when they perform administrative, investigative, or other functions; for example, when they give legal advice to the police, hold a press conference, or fabricate evidence. *Ibid.* "[T]he actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor. Qualified immunity represents the norm …. *The question, then, is whether the prosecutors have carried their burden of establishing that they were functioning as 'advocates'*" when they performed the actions complained of. *Buckley* [*v. Fitzsimmons*], 509 U.S. [259,] at 273-74, 113 S.Ct. 2606[, 125 L.Ed.2d 209 (1993)] (emphasis added). The Supreme Court has extended absolute immunity to prosecutors only where their challenged acts were performed while serving as an advocate in legal proceedings. *Kalina v. Fletcher*, 522 U.S. 118, 125, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997).

*Holloway*, 220 F.3d at 774-775.

{¶13} In the context of Section 1983 actions, the Sixth Circuit has further extended this absolute quasi-judicial immunity to social workers and caseworkers. "[U]nder certain circumstances, social workers are entitled to absolute immunity." *Holloway* at 774. "The scope of this immunity is akin to the scope of absolute prosecutorial immunity, * * *, which applies to conduct 'intimately associated with the judicial phase of the criminal process.'" (Citation omitted.) *Pittman*, 640 F.3d at 724. "By analogy, social workers are absolutely immune only when they are acting in capacity as *legal advocates*–initiating court actions

9

or testifying under oath–not when they are performing administrative, investigative, or other functions." *Holloway* at 775. "The analytical key * * * is *advocacy*–whether the actions in question are those of an advocate." *Id.[1]*

{¶14} We next consider whether caseworkers in Ohio are entitled to absolute immunity akin to the immunity granted to caseworkers in federal actions.

{¶15} In *Brodie v. Summit Cty. Children Servs. Bd.*, 51 Ohio St.3d 112, 554 N.E.2d 1301 (1990), suit was brought against a children services board for, inter alia, negligently failing or refusing to investigate reports of child abuse and negligently failing or refusing to file dependency and neglect proceedings. *Id.* at 113. The appellants urged the Ohio Supreme Court "to adopt the federal standards of absolute immunity accorded to departments of welfare or children services bureaus," where it was "generally alleged that [plaintiffs] had been deprived of due process of law by a state agency, specifically departments of welfare or children services bureaus, in that the agency failed to provide children with adequate protection against abuse or neglect, or the agency exceeded its powers." *Id.* at 115. The court "decline[d] to adopt the doctrine of absolute immunity as applied in Section 1983 cases against a political subdivision claiming deprivation of due process of law." The court found the federal authorities "inapposite, as the cause of action filed by Brodie is based on negligence and misfeasance for which there was no absolute

---

1. It has been observed that the United States "Supreme Court has not addressed the question of whether social workers can gain absolute immunity from suit for actions functionally analogous to a prosecutor's duties." *Thomas v. Kaven*, 765 F.3d 1183, 1191, fn. 6 (10th Cir.2014). Dissenting from the denial of a petition for writ of certiorari, Justice Thomas remarked, "it is not clear to me that the functional analysis of the Sixth Circuit is correct," and "I am not convinced that social workers, who often are involved in civil family welfare proceedings, can ever function as prosecutors for purposes of § 1983 immunity analysis." *Hoffman v. Harris*, 511 U.S. 1060, 114 S.Ct. 1631, 1633, 128 L.Ed.2d 354 (1994) (Thomas, J., dissenting). *See also Mabes v. McFeeley*, S.D.Ind. No. 1:21-cv-02062-JRS-MKK, 2023 WL 8878427, *4 ("[t]he analogy between criminal prosecution and DCS proceedings is imperfect, not least because so much of a DCS intervention is done administratively, with minimal procedural protections for the accused").

Case No. 2023-A-0042

immunity under Ohio law at the time the cause accrued." *Id.* at 116. Instead, the court applied the doctrine of good faith qualified immunity to the conduct of the children services board. *Id.*

{¶16} Although similar in some respects, we do not find *Brodie* controlling. The absolute immunity considered by the supreme court in *Brodie* was not based on the common law doctrine of judicial immunity, but rather a sovereign immunity which protected "officials whose special functions are of constitutional status requiring complete protection from suit." *Id.* at 115. The analytical key was not whether the official was acting in the capacity of advocate but whether the official was acting in a discretionary or ministerial capacity. "The test for whether immunity attaches is based upon the nature and scope of the discretion and responsibilities of the public official whose acts are the basis of the alleged liability." *Id.* Moreover, in the present case, the Dismukes' claims are based on negligent or intentionally tortious conduct in the course of investigating alleged abuse, rather than the failure to investigate. In other words, the absolute immunity urged by the appellants in the present case would not have applied to the children services board in *Brodie* even if it had been adopted.

{¶17} The only appellate court decision addressing the issue of which this Court is aware is *Maternal Grandmother v. Hamilton Cty. Dept. of Job & Family Servs.*, 2020-Ohio-1580, 154 N.E.3d 225 (1st Dist.), *rev'd on other grounds* 167 Ohio St.3d 390, 2021-Ohio-4096, 193 N.E.3d 536. *Maternal Grandmother* was an action for wrongful death and survivorship brought on behalf of the estate of a child who died in the custody of her parents. *Id.* at ¶ 1. Without question, the First District stated that, "[w]hen a caseworker provides information to a juvenile court for the purposes of assisting the juvenile court in

11

making a child-custody decision, the conduct is entitled to immunity." *Id.* at ¶ 20. The court then described the circumstances in which immunity applied as set forth in the *Holloway* and *Pittman* decisions cited above. The court held that immunity barred "the appellants['] claim that the caseworkers breached their duty 'in the context of the reports and information that the County and individual caseworkers provided to the juvenile court that resulted in the juvenile court ordering G.B.'s return to her mother.'" *Id.* at ¶ 19. "Because the statements made to the juvenile court by the caseworkers had been made while acting in their capacity as legal advocates, they are entitled to absolute immunity." *Id.* at ¶ 20. The court did not apply absolute immunity to other claims raised by the complaint, such as "the caseworkers failed to report abuse" and "the caseworkers failed to perform an adequate investigation." *Id.* at ¶ 24.

{¶18} In *Scharbrough*, the district court, endeavoring to predict how the Ohio Supreme Court would resolve the matter concluded as follows: "Given that Ohio's jurisprudence for prosecutorial immunity follows the Sixth Circuit approach, and the Sixth Circuit's decision in *Pittman* is an extension of its prosecutorial immunity doctrine, this Court will employ the functional approach to the caseworkers' claims for absolute common law immunity." *Scharbrough*, 2021 WL 2314848, at *11. The district court's characterization of Ohio jurisprudence's approach to prosecutorial immunity is accurate. *See Willitzer v. McCloud*, 6 Ohio St.3d 447, 449, 453 N.E.2d 693 (1983) ("[i]n determining whether the prosecutor's acts are quasi-judicial as opposed to investigative or administrative, the [federal] courts have applied a functional analysis of his activities, rather than simply stating that he is a prosecutor whose status entitles him to absolute immunity"); *Elliott v. Ohio Dept. of Ins.*, 88 Ohio App.3d 1, 8-9, 623 N.E.2d 87 (10th

12

Dist.1993) ("[f]or purposes of this case, we will assume Ohio law to be the same as federal law [regarding prosecutorial immunity]"); *Henderson v. Euclid*, 8th Dist. Cuyahoga No. 101149, 2015-Ohio-15, ¶ 28 ("[i]n accordance with the foregoing [federal precedents], * * * the trial court properly held that the prosecutor is entitled to absolute immunity").

{¶19} Given the soundness of the *Scharbrough* court's analysis, the fact that *Brodie* was decided before *Holloway* and *Pittman* and was based on different legal premises, as well as to avoid conflict with *Maternal Grandmother*, this Court finds it appropriate that the appellants herein are entitled to immunity akin to that enjoyed by prosecutors inasmuch as they are alleged to have engaged in conduct that is the functional equivalent of legal advocacy.

{¶20} As applied to the Dismukes' Complaint, in the context of a motion to dismiss based on the pleadings, immunity only applies to the claim for malicious civil prosecution as that claim is based solely on the institution of legal proceedings against the Dismukes, a quintessential act of legal advocacy. *Presutto v. Hull*, 9th Dist. Lorain No. 17CA011218, 2018-Ohio-3103, ¶ 7 ("Courts have held that the immunity of prosecutors extends to allegations of malicious prosecution"); *Imbler*, 424 U.S. at 428, 96 S.Ct. 984, 47 L.Ed.2d 128. With respect to the Dismukes' other claims – negligence, invasion of privacy, loss of consortium, infliction of emotional distress, and violations of the administrative code – it is not possible at this stage of the litigation to determine whether the immunity granted to caseworkers precludes the Dismukes from the possibility of recovery. Again, it is worth emphasizing the nature and the limitations of that immunity:

> Opening a case as an investigation with [job and family services] is very different than initiating a case in juvenile court. One of these activities–the initiation of a juvenile court case–would entitle the [job and family services] Defendants involved to absolute immunity

13

Case No. 2023-A-0042

because they are acting in their role as legal advocates. Opening internal [job and family services] investigations against Plaintiffs on insufficient or false information, however, falls into the category of investigatory functions. When individuals perform such functions, they are entitled to qualified immunity, at best. *Holloway*, 220 F.3d at 775. Even if investigation results in a court proceeding, it will not automatically be retroactively shielded by that proceeding. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 276 (1993) ("A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, … that work may be retrospectively described as 'preparation' for a possible trial[.]"). * * * Additionally, caseworkers are not entitled to absolute immunity when executing a court order because they are "acting in a police capacity rather than as legal advocates." *Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 685 (6th Cir.2018) (quoting *Kovacic v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 724 F.3d 687, 694 (6th Cir.2014)).

*Scharbrough* at *10-11.

{¶21} The appellants also contend that the trial court erred by denying their Motion to Dismiss based on political subdivision immunity. The appellants initially and correctly argue that the trial court erred by denying the Children Services Board the benefit of immunity based on the alleged acts or omissions of its employee-appellants, Chicarell, Burnett, and Brown.

{¶22} "Ohio law generally provides political subdivisions and their employees with immunity from lawsuits and liability." *Maternal Grandmother*, 167 Ohio St.3d 390, 2021-Ohio-4096, 193 N.E.3d 536, at ¶ 7, citing R.C. 2744.02(A)(1) ("a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function") and R.C. 2744.03(B)(6) ("the employee is immune from liability"). The "operation of a job and family services department or agency" is a statutorily defined governmental function. R.C.

14

2744.01(C)(2)(m); *Rankin v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 118 Ohio St.3d 392, 2008-Ohio-2567, 889 N.E.2d 521, ¶ 16; *M.F. v. Perry Cty. Children Servs.*, 5th Dist. Perry Nos. 19-CA-0003 and 19-CA-0004, 2019-Ohio-5435, ¶ 30; *Masek v. Gehring*, 11th Dist. Geauga No. 2004-G-2569, 2005-Ohio-3900, ¶ 22.

{¶23} The immunity granted by R.C. 2744.02(A)(1) to a political subdivision engaged in a governmental function is subject to five exceptions, set forth in R.C. 2744.02(B), none of which have any apparent relevance to the allegations of the Dismukes' Complaint. *Rankin* at syllabus ("[a] political subdivision is not liable for damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission in connection with its operation of a public children services agency except as provided in R.C. 2744.02(B)"). The *Rankin* case, in which suit was brought against a county department of children and family services and its employees for failure to protect a child committed to their temporary custody against sexual abuse, is illustrative: "R.C. 2744.02(B) lists five exceptions to the general denial of liability; however, none of the exceptions applies to these facts. The injuries in this case did not involve the operation of a motor vehicle (R.C. 2744.02(B)(1)), a proprietary function (R.C. 2744.02(B)(2)), public roads (R.C. 2744.02(B)(3)); physical defects of a building (R.C. 2744.02(B)(4)), or a duty expressly imposed on appellants by statute (R.C. 2744.02(B)(5)). As a result, the general denial of liability granted in R.C. 2744.02(A) applies to the department [of job and family services] * * *." *Rankin* at ¶ 29.

{¶24} The foregoing analysis applies to the appellant, Children Services Board, but not the Board's employee-appellants, Chicarell, Burnett, and Brown. *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 2007-Ohio-1946, 865 N.E.2d 9, ¶ 17 ("[f]or the

15

individual employees of political subdivisions, the analysis of immunity differs"). An employee of a political subdivision loses the benefit of immunity when his or her "acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;" his or her "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;" or "[c]ivil liability is expressly imposed upon the employee by a section of the Revised Code." R.C. 2744.03(A)(6)(a)-(c); *Rankin* at ¶ 36.

{¶25} The trial court in the present case denied the appellants' Motion to Dismiss on the basis of political subdivision immunity on the grounds that they had failed to demonstrate, on the face of the Complaint, that the Dismukes could not prove that "the ACCSB and its agents and employees['] acts were manifestly outside the scope of their employment and/or official responsibilities, or were done with malicious purpose, in bad faith, or in a wanton or reckless manner." For the reasons demonstrated above, this is insufficient to remove the Children Services Board's immunity. With respect to Chicarell, Burnett, and Brown, these allegations are sufficient to state a claim. *Maternal Grandmother*, 167 Ohio St.3d 390, 2021-Ohio-4096, 193 N.E.3d 536, at ¶ 7 ("Ohio law permits plaintiffs to sue and hold liable employees of a political subdivision if the employees' acts or omissions in the course and scope of their employment were wanton or reckless").

{¶26} The appellants argue that "[t]he Complaint itself never alleges that Chicarell, Burnett, or Brown acted outside the scope of their employment/official capacities or that they acted maliciously, in bad faith, or in a wanton or reckless manner." Appellants' Brief at 13. We disagree. The Dismukes' Complaint, as quoted above, alleges conduct by the "Defendants, jointly and severally," constituting negligence, invasion of privacy, loss of

16

consortium, infliction of emotional distress, and violations of the administrative code. In the body of the Complaint, some acts are attributed to the employees individually (Chicarell as "Caseworker," Burnett as "Director," and Brown as "Supervisor"), while other acts are ascribed to "the ACCSB" generally. For the purpose of stating valid claims for relief, the Dismukes' pleading is sufficient.

{¶27} The *Maternal Grandmother* case is illustrative. The court of appeals affirmed the grant of judgment on the pleadings because "[t]he amended complaint [did] not specify how the conduct of the caseworkers constituted willful misconduct," "wanton misconduct," "reckless misconduct," or "bad faith." *Maternal Grandmother*, 2020-Ohio-1580, 154 N.E.3d 225, at ¶ 32. "[M]erely saying that they had acted in one of those ways (the amended complaint cannot even identify which) is insufficient." *Id.*

{¶28} The Supreme Court of Ohio reversed, holding that the amended complaint "did all that was required at the pleading stage by putting the caseworkers on notice of the claims against them and raising the possibility that the exception to their statutory immunity under R.C. 2744.03(A)(6)(b) might apply." *Maternal Grandmother*, 167 Ohio St.3d 390, 2021-Ohio-4096, 193 N.E.3d 536, at ¶ 15. The court explained:

> Ohio is a notice-pleading state. *Wells Fargo Bank N.A. v. Horn*, 142 Ohio St.3d 416, 2015-Ohio-1484, 31 N.E.3d 637, ¶ 13. This means that outside of a few specific circumstances, such as claims involving fraud or mistake, *see* Civ.R. 9(B), a party will not be expected to plead a claim with particularity. Rather, "a short and plain statement of the claim" will typically do. Civ.R. 8(A).
>
> In this context, i.e., a case in which 2 government employee's [sic] allegedly wanton or reckless behavior is at issue, these general pleading rules still apply. *See* Civ.R. 9(B) ("Malice, intent, knowledge, and other condition of mind of a person may be averred generally"). Accordingly, we hold that when a complaint invokes the exception to a government employee's immunity under R.C. 2744.03(A)(6)(b), notice pleading suffices and the plaintiff may not

17

be held to a heightened pleading standard or expected to plead the factual circumstances surrounding an allegation of wanton or reckless behavior with particularity. *Accord Parmertor v. Chardon Local Schools*, 2016-Ohio-761, 47 N.E.3d 942, ¶ 49-51 (11th Dist.); *Thompson v. Buckeye Joint Vocational School Dist.*, 2016-Ohio-2804, 55 N.E.3d 1, ¶ 31 (5th Dist.); *see also York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 144-145, 573 N.E.2d 1063 (1991).

*Id.* at ¶ 10-11. *See also Rankin*, 118 Ohio St.3d 392, 2008-Ohio-2567, 889 N.E.2d 521, at ¶ 38 (reversing a grant of summary judgment as to whether caseworkers acted recklessly where "[t]he record before us is incomplete as to whether genuine issues of material fact exist regarding [the caseworkers'] alleged reckless conduct," it was appropriate "to remand this cause to the trial court for further proceedings regarding what involvement, if any, [they] had in the supervised visit").

{¶29} To the extent indicated above, the appellants' assignments of error are with merit.

{¶30} For the foregoing reasons, we affirm in part and reverse in part. All appellants are entitled to judgment with respect to the Dismukes' claim for malicious prosecution. Appellant, Ashtabula County Children Services Board, is entitled to judgment with respect to the remainder of the claims in the Complaint. This matter is remanded for further proceedings consistent with this Opinion. Costs to be taxed between the parties equally.


JOHN J. EKLUND, J.,

ROBERT J. PATTON, J.,

concur.


18

Case No. 2023-A-0042